**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WANDA GARNER. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:25-cv-4024 |
| | * | |
| TRANSIT EMPLOYEES FEDERAL CREDIT UNION | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

**<u>TABLE OF CONTENTS</u>**

**I. INTRODUCTION** ..................................................................................................1

**II. STANDARD OF REVIEW** .................................................................................2

    A. Motion to Dismiss...........................................................................................4

    B. Summary Judgment.........................................................................................5

    C. Rule 12(d) Conversion ...................................................................................5

    D. Substantive Standards ....................................................................................6

**III. THE MOTION TO DISMISS SHOULD BE DENIED** ........................................7

    A. The Complaint States Plausible Claims Under Title VII and the DCHRA .............7

    B. The DCHRA Claims Are Plausible ...................................................................14

    C. Count III Should Be Dismissed ........................................................................15

**IV. THE SUMMARY JUDGMENT MOTION IS PROCEDURALLY IMPROPER**16

    A. Summary Judgment Is Per Se Improper Without Discovery in Employment
    Discrimination Cases .......................................................................................16

    B. The Affidavit is from an Interested Participant ...................................................18

    C. Rule 12(d) Requires "Reasonable Opportunity" to Conduct Discovery ................19

    D. Rule 56(d) Provides Additional Grounds for Deferring Summary Judgment .......20

**V. EVEN IF THE COURT CONSIDERS SUMMARY JUDGMENT, MATERIAL DISPUTES OF FACT PRECLUDE JUDGMENT** ......................................................27

    A. Defendant's Own Evidence Creates an Insoluble Problem....................................28

    B. The 90-Day Review Contradicts Claims of Poor Performance ............................29

    C. Direct Evidence of the March 7 Conversation Defeats Summary Judgment.........32

    D. The Compressed 70-Day Timeline ......................................................................33

    E. The Severance Offer Demonstrates Consciousness of Weak Reasons..................36

**VI. CONCLUSION**..................................................................................................38

## TABLE OF AUTHORITIES

**CASES**

Supreme Court Cases:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................4

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)....................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................5

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ........................................11

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................4

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271 (2009)...13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)..................................4,6

*Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003)........................................6

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).......................................6, 9, 27

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............24, 25, 37

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..................................................4

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985).................................8

D.C. Circuit Cases:

*Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).....5, 7, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................4

*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009) ....................4

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008).........17, 18, 28

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999) ........................................12, 30, 31

*Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014) ................................................4

*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93 (D.C. Cir. 2012) .............16, 17 20

*Forkkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002) ...............................................11

*Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012)............................20, 26, 32

*Haynes v. Dist. of Columbia Water & Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019)21

*Stewart v. National Education Ass'n*, 471 F.3d 169 (D.C. Cir. 2006) ....................16

*Tao v. Freeh*, 27 F.4th 635 (D.C. Cir. 2022)..........................................................20

*Tele-Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330 (D.C. Cir. 1985)6, 20

*Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002) ......................2

*Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007) ................................................11


Other Circuit Cases:

*Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000) ............................37

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) .8

*Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349 (4th Cir. 1992) 37

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 (1st Cir. 2000)....9

*Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994) .................................9


District Court Cases:

*Jones v. Lattimer*, 29 F. Supp. 3d 5 (D.D.C. 2014)................................................17

*Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158 (D.D.C. 2008) ........................17


**STATUTES**

D.C. Code § 2-1401.02(12A)....................................................................................14

D.C. Code § 32-501(2)(A)(i) ...................................................................................15

**RULES**

Fed. R. Civ. P. 12(d) ...........................................................................................6, 20

Fed. R. Civ. P. 56(a) .................................................................................................5

Plaintiff Wanda Garner, by and through her undersigned counsel, hereby opposes Defendant Transit Employees Federal Credit Union's Motion to Dismiss or, in the Alternative, for Summary Judgment. In support of this Opposition, Plaintiff submits this Memorandum of Law and the Declaration of Wanda Garner.

## I. INTRODUCTION

On March 7, 2025, when Plaintiff Wanda Garner reported her son's medical emergency and stated she needed to leave work at 1:00 PM for an emergency room visit, Defendant's Chief Administrative Officer and HR Manager asked whether she wanted to "step down from [her] position or transition to part-time due to [her] need to leave for [her] son's emergency." Management issued a written warning that same day. Forty days later, Ms. Garner was suspended for six days without pay for a childcare emergency. Seventy days after the March 7 conversation, she was terminated.

**Reasons for Denial**

A. **The motion is procedurally improper**. Defendant filed this motion one month after the case was filed, attaching an affidavit from Danielle McAllister—one of the two individuals who participated in the allegedly discriminatory March 7 conversation—before any discovery occurred. No Rule 26(f) conference has been held. No scheduling order exists. No depositions

have been taken. No documents have been produced. Federal Rule of Civil Procedure 12(d) requires that Plaintiff be given "a reasonable opportunity to present all the material that is pertinent to the motion." Plaintiff has had no such opportunity. Summary judgment should be used sparingly in employment discrimination cases. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

B. **The Complaint states plausible claims that survive dismissal.** The March 7 conversation constitutes direct or highly probative evidence of sex discrimination. The D.C. Circuit has recognized that "statements revealing discriminatory motivation are highly probative" of discriminatory intent. *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002). The subsequent pattern of escalating discipline, combined with Ms. Garner's satisfactory 90-day performance review, the DC Employment Services finding that Defendant "failed to provide evidence that the claimant failed to successfully perform his/her job duties," and witness corroboration, states viable claims under Title VII and the DC Human Rights Act.

C. **Defendant's evidence creates disputed facts rather than resolving them.** Most significantly, Ms. McAllister's affidavit does not deny the March 7 conversation or address what was said during it. This conspicuous silence from a direct participant creates a credibility dispute that only a jury can resolve.

D. **Defendant's own affidavit creates an additional insoluble problem:** Ms. McAllister admits Ms. Garner was "responsible for disciplinary actions

2

against" comparator Cloe Allen, yet Allen received no discipline for nine family-related absences. McAllister Aff. ¶ 3; Compl. ¶ 38. Either upper management instructed differential treatment (proving discrimination), or family-related absences were not considered serious infractions (proving pretext). Discovery will establish which explanation is true—but either answer defeats summary judgment.

The affidavit also contradicts the DC Employment Services finding, conflicts with Ms. Garner's satisfactory 90-day performance review and will be contradicted by documentary evidence Plaintiff will obtain through discovery.

**E. Discovery is essential.** In this one-month-old case, Plaintiff requires discovery regarding the March 7 conversation, the decision-making process for the adverse actions, communications among management, comparator treatment, and documentary evidence demonstrating pretext and discriminatory intent. Employment discrimination cases require discovery because "direct evidence of intentional discrimination is rare, and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Aka*, 156 F.3d at 1288.

Plaintiff concedes that Count III (DCFMLA) should be dismissed because she had not completed twelve months of employment when the adverse actions occurred. However, Counts I, II, IV, and V state viable claims that easily survive

the pleading standard and present genuine disputes of material fact that preclude summary judgment.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). The complaint need not contain "detailed factual allegations," but it must offer "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs need not plead a prima facie case under *McDonnell Douglas* to survive dismissal. *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014). "Imposing [a] heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A complaint in an employment discrimination case "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### B. Summary Judgment

4

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*

In employment discrimination cases, "summary judgment should be used sparingly" because "intent and credibility are crucial issues" and "direct evidence of intentional discrimination is rare." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). "Summary judgment should not be granted unless the evidence could not support any reasonable inference of discrimination." *Id.*

The D.C. Circuit sitting en banc emphasized this standard precisely because employment discrimination cases turn on "intent and credibility"—issues that "are jury questions" unsuited to summary disposition before full development of the record. *Aka*, 156 F.3d at 1288.

## C. Rule 12(d) Conversion

When matters outside the pleadings are presented on a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment, and "all parties must be

5

given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A court must "assure itself that summary judgment treatment would be fair to both parties in that the procedural requirements of the applicable rules were observed." *Tele-Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985).

### D. Substantive Standards

i.   **Prima Facie Case—Sex Discrimination:** (1) membership in a protected class; (2) qualification for the position; (3) adverse employment action; and (4) circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

ii.  **Family Responsibilities Discrimination:** Sex discrimination includes adverse actions based on sex-based stereotypes about mothers and caregiving. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (sex stereotyping violates Title VII); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003) (recognizing "pervasive sex-role stereotype that caring for family members is women's work").

iii. **Prima Facie Case—Retaliation:** (1) protected activity; (2) adverse action; and (3) causal connection. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006).

iv.  **Pretext:** A plaintiff may demonstrate pretext by showing the employer's reason "(1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action." *Aka*, 156 F.3d at 1289. A

plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

## III. THE MOTION TO DISMISS SHOULD BE DENIED

### A.  The Complaint States Plausible Claims Under Title VII and the DCHRA

At the motion to dismiss stage, the Court must accept Ms. Garner's well-pleaded factual allegations as true and draw all reasonable inferences in her favor. *Atherton*, 567 F.3d at 681. The Complaint alleges facts that, if proven, establish sex discrimination, retaliation, family responsibilities discrimination, and retaliation under the DCHRA.

### i.  The March 7 Conversation Constitutes Direct Evidence of Sex Discrimination

The Complaint alleges that on March 7, 2025, Chief Administrative Officer Jennifer Le and HR Manager Danielle McAllister asked whether Ms. Garner wanted to "step down from [her] position or transition to part-time due to [her] need to leave for [her] son's emergency." Compl. ¶ 22. When Ms. Garner questioned why a permanent employment change would be warranted for a temporary family

7

emergency, Jennifer Le ended the call: "Wanda, this conversation is over." *Id.* Management issued a written warning that same day. *Id.* ¶ 26.

In *Waterhouse v. District of Columbia*, the D.C. Circuit recognized that "statements revealing discriminatory motivation are highly probative" of discriminatory intent. 298 F.3d 989, 993 (D.C. Cir. 2002). Here, management's March 7 statement explicitly connecting Ms. Garner's need to care for her sick child to a proposed demotion or reduction in hours is precisely the type of statement *Waterhouse* identifies as highly probative of discriminatory animus.

This statement constitutes direct evidence of sex discrimination or, at minimum, highly probative circumstantial evidence. Direct evidence is evidence that "if believed, proves [the] fact [of discriminatory animus] without inference or presumption." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Courts have consistently found direct evidence where supervisors explicitly link adverse actions to protected characteristics:

- *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004): statement that employer viewed plaintiff "primarily as a mother" constituted direct evidence of sex discrimination.

- *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994): employer told pregnant employee she was being terminated because of her pregnancy— direct evidence.

- *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000): supervisor's statement that plaintiff "should be at home taking care of [his] family" was direct evidence.

The Supreme Court has recognized that Title VII prohibits adverse actions based on "sex-based assumptions" about caregiving. *Price Waterhouse*, 490 U.S. at 251. The assumption that women with children cannot handle full-time management positions is precisely the type of sex stereotype Title VII prohibits. *Hibbs*, 538 U.S. at 736.

### ii.    The Timeline Demonstrates Escalating Retaliation Following the March 7 Conversation

The Complaint alleges a pattern of escalating discipline immediately following the March 7 conversation:

- April 22, 2024: Hired

- July 2024 (90 days): Performance review rates her "Meets Expectations" in all six categories

- First 10 months: No discipline

- March 7, 2025: Family emergency → "step down" demand → written warning same day

- April 16, 2025 (40 days later): Childcare COVID emergency → 6-day suspension

- May 16, 2025 (70 days later): Termination

9

- June 12, 2025: DC Employment Services finds "no evidence" of performance deficiencies

- June 13, 2025 (next day): Severance offer

The timeline is illustrated as follows:

April 22, 2024 Hired

↓

July 2024 90-day review: "Meets Expectations" (all 6 categories)

↓

March 7, 2025 Family emergency → "step down" demand → Written Warning (SAME DAY)

↓

April 16, 2025 Childcare emergency → 6-DAY SUSPENSION (40 days later)

↓

May 16, 2025 TERMINATION (70 days later)

↓

June 12, 2025 DC Employment Services: "no evidence" of performance deficiencies

↓

June 13, 2025 Severance offer (NEXT DAY)

    This compressed timeline—from satisfactory performance to termination in 70 days following a family emergency and discriminatory statement—eliminates any reasonable inference of legitimate performance-based termination.

This timeline creates a compelling inference of discriminatory and retaliatory intent. Temporal proximity is "highly probative" of causation—and same-day adverse action is the most probative proximity possible. *Woodruff v. Peters*, 482 F.3d 521, 529-30 (D.C. Cir. 2007); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (even two-month gap sufficient); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (three to four months may suffice). Management issued a written warning within hours of Ms. Garner's refusal to accept demotion, eliminating any inference that the warning resulted from independent performance review.

Ms. Garner received no discipline during her first ten months and earned a satisfactory performance review at 90 days. Within hours of refusing to step down due to her family responsibilities, she received a written warning. Within weeks, she was suspended for another childcare emergency. Within weeks of that, she was terminated. This pattern, beginning immediately after the March 7 conversation, creates a plausible inference that the adverse actions were motivated by discriminatory animus toward her family responsibilities and retaliation for refusing to accept a demotion.

As the Supreme Court held in *Reeves*, a plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148.

### iii.     Comparator Evidence Demonstrates Disparate Treatment

11

Cloe Allen, a similarly situated employee, accumulated at least nine absences or late arrivals for family-related reasons—including extended bereavement leave for her sister's death—without receiving any discipline. The Complaint alleges that Ms. Allen was not subject to discipline for these kinds of absence Cmpl. ¶ 38. Both Ms. Garner and Ms. Allen were branch-level employees who took absences for family-related reasons, yet only Ms. Garner faced progressive discipline culminating in termination.

At the pleading stage, the Court must accept these allegations as true. *Atherton*, 567 F.3d at 681. Comparators need not be "mirror images" but must be "similar enough and the circumstances surrounding the comparisons apt enough that a reasonable fact-finder could conclude that the employer gave preferential treatment to other similarly situated employees." *Aka*, 156 F.3d at 1294-95.

In *Brown v. Brody*, the D.C. Circuit held that "employees have been found similarly situated even when they reported to different immediate supervisors if the same decision-makers were involved in the adverse actions." 199 F.3d 446, 452 (D.C. Cir. 1999). The Complaint alleges that disciplinary decisions were made or approved by upper-level management, including CEO Rita Smith and Chief Administrative Officer Jennifer Le. Compl. ¶¶ 22, 50. Both employees took family-related absences; the markedly different treatment creates a plausible inference of discrimination.

### iv.    Protected Opposition Supports Retaliation Claims

12

Ms. Garner engaged in protected opposition by responding in writing to the March 7 warning and April 16 suspension, challenging the discipline as unjustified. Compl. ¶¶ 27, 39. Protected opposition includes "informal protests" and written responses challenging discipline. *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009).

The temporal connection supports retaliation claims: after she challenged the March 7 warning, she was suspended; after she challenged the suspension, she was terminated. This pattern of escalating adverse actions following opposition creates a plausible inference of retaliation. *Burlington*, 548 U.S. at 67-68.

### v. Additional Allegations Support Plausible Claims

The Complaint alleges additional facts supporting plausible inferences of discrimination and pretext:

- Unemployment decision: DC Employment Services found Defendant "failed to provide evidence that the claimant failed to successfully perform his/her job duties." Compl. ¶ 53.
- Post-termination severance offer: One day after the unemployment decision, Defendant offered severance in exchange for a release. *Id.* ¶¶ 54-55.[1]
- Witness corroboration: Four former employees provided statements describing satisfactory performance and disparate treatment. *Id.* ¶¶ 57-63.

---

[1] Defendant's Federal Rule of Evidence 408 objection to this evidence is addressed in Section V.E., *infra*.

13

- Medical documentation: Healthcare provider noted on May 19, 2025, that after termination, Ms. Garner felt "much better" because "the stress of her employment is no longer on her." Compl. ¶ 30.

Taken together, these allegations easily satisfy the pleading standard and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.  The DCHRA Claims Are Plausible

The District of Columbia Human Rights Act explicitly prohibits discrimination based on "family responsibilities," defined as "the state of being, or the potential to become, a contributor to the support of a person or persons in a dependent relationship, irrespective of their number, including the state of being the parent of a minor child." D.C. Code § 2-1401.02(12A). The District of Columbia Human Rights Act is a remedial statute that must be construed liberally to effectuate its broad protective purposes, and the procedural requirements governing complaints before the D.C. Office of Human Rights ("DC OHR") and the Equal Employment Opportunity Commission ("EEOC") are to be read broadly and flexibly in an employee's favor because they are designed for laypersons rather than lawyers. *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885–86 (D.C. 2008); see also D.C. Official Code §§ 2-1403.04(a), 2-1403.16(a).

The March 7 conversation—asking Ms. Garner to step down or go part-time "due to [her] need to leave for [her] son's emergency"—directly implicates family

14

responsibilities discrimination. Unlike Title VII, which requires proof that stereotypes are sex-based, the DCHRA prohibits discrimination based on family responsibilities directly and explicitly. The subsequent suspension for a childcare emergency and termination citing family-related absences further support the claim.

Management explicitly connected Ms. Garner's family responsibilities to an adverse employment action during the March 7 conversation. The subsequent pattern of discipline for family-related absences, disparate treatment of a comparator with family-related absences, and the timing of adverse actions all support the DCHRA claims. This is not a case of "bare assertions"—it is a specific, detailed pattern of adverse actions directly linked to family caregiving.

## C. Count III Should Be Dismissed

Plaintiff concedes Count III (DCFMLA) should be dismissed. The DCFMLA requires twelve months of employment "preceding the date on which the period of family or medical leave is to commence." D.C. Code § 32-501(2)(A)(i). Ms. Garner was hired April 22, 2024; the adverse actions occurred before she completed twelve months. Compl. ¶¶ 11, 15, 31.

However, ineligibility for DCFMLA protection does not immunize Defendant from Title VII and DCHRA liability. An employee's ineligibility for FMLA leave does not preclude discrimination claims based on family responsibilities. *Stewart v. National Education Ass'n*, 471 F.3d 169, 173-74 (D.C. Cir. 2006). The DCFMLA

15

provides a specific statutory right to leave; Title VII and the DCHRA address discrimination and retaliation based on sex and family responsibilities. These are distinct legal theories with different elements.

## IV. THE SUMMARY JUDGMENT MOTION IS PROCEDURALLY IMPROPER

Even if the Court concludes the motion to dismiss should be denied, the Court should not reach the summary judgment motion because it is procedurally defective and substantively premature.

### A. Summary Judgment Is Per Se Improper Without Discovery in Employment Discrimination Cases

"Summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson*, 477 U.S. at 257). "Summary judgment should not be granted before plaintiff has been afforded the opportunity to take discovery." *Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158, 163 (D.D.C. 2008). "[S]ummary judgment is ordinarily appropriate only after the plaintiff has been given an adequate opportunity to conduct discovery." *Jones v. Lattimer*, 29 F. Supp. 3d 5, 17 (D.D.C. 2014) (citing *Convertino*, 684 F.3d at 99).

Defendant filed this motion on December 22, 2025—one month after the Complaint was filed. With the motion, Defendant submitted an affidavit from Danielle McAllister and extensive exhibits. However:

- No discovery has occurred

- The parties have not held a Rule 26(f) conference

- No scheduling order exists

- No depositions have been taken

- No documents have been produced through formal discovery

- No interrogatories have been served

Plaintiff has had zero opportunity to develop her case through discovery.

The need for discovery is particularly acute in employment discrimination cases. Summary judgment should be used sparingly in employment discrimination cases, where intent and credibility are crucial issues. Direct evidence of intentional discrimination is rare, and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *Aka*, 156 F.3d at 1288; *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *Waterhouse*, 298 F.3d at 993.

The central issue here is discriminatory intent—what was said during the March 7 conversation, what motivated the subsequent adverse actions, and whether Defendant's stated reasons are pretextual. This cannot be resolved based on Defendant's unilateral presentation of evidence before any discovery.

17

B. **The Affidavit Is from an Interested Participant in the Allegedly Discriminatory Conversation**

Ms. McAllister is not a neutral witness. She is one of the two individuals who participated in the allegedly discriminatory March 7, 2025 conversation in which management asked Ms. Garner to step down or go part-time due to her family responsibilities. Compl. ¶ 22. She is now offering an 8,000-word affidavit defending her own conduct.

The affidavit is self-serving and requires testing through discovery. Most significantly, Ms. McAllister's affidavit does not deny the March 7 conversation or address what was said during it. This conspicuous silence from a direct participant creates a credibility dispute that only a jury can resolve. As the D.C. Circuit has held, "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Brady*, 520 F.3d at 494 (citing *Anderson*, 477 U.S. at 255).

Plaintiff is entitled to:

- Depose Ms. McAllister and Jennifer Le under oath regarding what was said during the March 7 conversation
- Obtain communications among management about Ms. Garner and her family responsibilities, including any references to "working mothers" or Ms. Garner's "family situation"

18

- Obtain documentary evidence (text messages, OneNote records, personnel files) that will contradict the affidavit's claims

- Obtain witness testimony corroborating Ms. Garner's version of events

- Obtain complete personnel and disciplinary records for Cloe Allen showing nine undisciplined absences

- Obtain comparator analysis of all branch employees' disciplinary records from 2024-2025

All of this evidence is in Defendant's exclusive possession and control. Resolving this case based on an untested affidavit from a participant in the allegedly discriminatory conversation, before Plaintiff has conducted any discovery, would effectively eliminate the discovery process that Rules 12(d) and 56(d) are designed to protect.

## C.  Rule 12(d) Requires "Reasonable Opportunity" to Conduct Discovery

When matters outside the pleadings are presented on a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment, and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added).

"Reasonable opportunity" means actual opportunity to conduct discovery. A court must "assure itself that summary judgment treatment would be fair to both parties in that the procedural requirements of the applicable rules were observed." *Tele-Commc'ns of Key W.*, 757 F.2d at 1334. One month—with no Rule 26(f)

conference, no scheduling order, and no discovery—does not constitute "reasonable opportunity" when the evidence needed to respond is in Defendant's exclusive possession and control.

## D.  Rule 56(d) Provides Additional Grounds for Deferring Summary Judgment

Federal Rule of Civil Procedure 56(d) provides that if a nonmovant shows it cannot present facts essential to justify its opposition, the court may defer considering the motion or allow time for discovery. District courts abuse their discretion by denying Rule 56(d) motions where discovery has not occurred. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Tao v. Freeh*, 27 F.4th 635, 651 (D.C. Cir. 2022).

A Rule 56(d) motion requesting time for additional discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino*, 684 F.3d at 99. To obtain relief, the movant must submit an affidavit that satisfies three criteria:

First, it must "outline the particular facts [movant] intends to discover and describe why those facts are necessary to the litigation." *Id.* at 99-100. Second, it must "explain why [movant] could not produce [the facts] in opposition to the motion [for summary judgment]." *Id.* at 100. Third, it must "show the information is in fact discoverable." *Id.* These requirements ensure that discovery is not used to remedy "lack of diligence." *Id.*

The D.C. Circuit has applied these criteria in employment discrimination cases. In *Haynes v. District of Columbia Water & Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019), the court reviewed denial of a Rule 56(d) request for abuse of discretion and noted that "the declaration must explain, with sufficient particularity, what specific facts are required to oppose the motion and why those facts are necessary." *Id.* at 530-31. The court found the plaintiff's declaration "deficient" because it "listed categories of 'information and documentation'" but "said nothing about 'why those facts [were] necessary' to respond to the motion or to support the allegations in the complaint." *Id.* at 531 (quoting *Convertino*, 684 F.3d at 99).

As set forth in the accompanying Declaration of Wanda Garner, Plaintiff requires discovery of the following specific facts that will preclude summary judgment:

### i.      March 7 Conversation Evidence

*Specific facts to be discovered:* Depositions of McAllister and Le regarding the exact words spoken during the March 7 conversation; communications between McAllister and Le before, during, and after the conversation; any written notes or records of the conversation.

*Why necessary:* McAllister's affidavit is conspicuously silent on the central allegation—she does not deny asking Ms. Garner to "step down" due to family responsibilities. Discovery will establish whether this discriminatory statement was made, creating direct evidence of sex discrimination under *Waterhouse* and *Price*

21

*Waterhouse*. The absence of denial permits an inference the conversation occurred as alleged, but Plaintiff is entitled to depose McAllister under oath to confirm.

*Why unavailable:* Defendant has exclusive control over these witnesses and any documentary evidence. No depositions have been taken in this one-month-old case.

### ii.    Decision-Maker Communications Showing Discriminatory Animus

*Specific facts to be discovered:* Emails, text messages, Slack messages, or other communications among CEO Rita Smith, CAO Jennifer Le, and HR Manager Danielle McAllister regarding Ms. Garner's family responsibilities, references to "working mothers," discussions of Ms. Garner's "family situation," or similar content showing discriminatory motivation.

*Why necessary:* In employment discrimination cases, discriminatory intent "often must be inferred from circumstantial evidence found in affidavits and depositions." *Aka*, 156 F.3d at 1288. Communications among decision-makers often reveal discriminatory animus not apparent in formal employment actions. Such communications would constitute highly probative circumstantial evidence under *Waterhouse*.

*Why unavailable:* These communications are in Defendant's exclusive possession and control. No discovery has occurred.

### iii.    Complete Personnel File for Comparator Cloe Allen

22

*Specific facts to be discovered:* Complete disciplinary and attendance records for Cloe Allen, including documentation of nine family-related absences alleged in the Complaint; communications among management regarding whether to discipline Allen; any performance evaluations or reviews.

*Why necessary:* Defendant's own affidavit admits Ms. Garner "was Cloe Allen's supervisor and was responsible for disciplinary actions against Ms. Allen." McAllister Aff. ¶ 3. This creates an insoluble problem: if Ms. Garner was responsible for disciplining Allen, why was Allen not disciplined for nine family-related absences? Discovery will reveal whether (1) upper management instructed Ms. Garner not to discipline Allen (showing disparate treatment), or (2) Ms. Garner exercised discretion not to discipline Allen (showing family-related absences were not serious infractions). Either explanation demonstrates pretext under *Aka*.

*Why unavailable:* Allen's complete personnel file is in Defendant's exclusive possession.

### iv.    Text Messages Showing April 16 Advance Notice

*Specific facts to be discovered:* Text messages from Ms. Garner to management at 7:48 AM on April 16, 2025, forwarding daycare provider's COVID notification.

*Why necessary:* McAllister's affidavit claims "Plaintiff took April 16, 2025 off without approval or advance notice." McAllister Aff. ¶ 13. The Complaint alleges

23

Ms. Garner provided notice at 7:48 AM before the workday began. Compl. ¶¶ 31-32. If text messages confirm Ms. Garner provided advance notice, Defendant's characterization is demonstrably false. "The factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves*, 530 U.S. at 147. This factual dispute defeats summary judgment and demonstrates pretext.

*Why unavailable:* Text message records are in Defendant's possession or can be obtained from Defendant's phone system.

### v.    OneNote Entry Documenting February 19 WMATA Issue

*Specific facts to be discovered:* Defendant's complete OneNote system records; access logs showing whether management reviewed OneNote entries; communications among management regarding the WMATA issue or the OneNote system.

*Why necessary:* The termination letter claims Ms. Garner failed to timely communicate the WMATA payroll issue. McAllister Aff., Ex. 10. Plaintiff has a printed copy of her February 19, 2025 OneNote entry proving she documented the issue and asked management for guidance. Garner Decl. ¶14, Ex. 2. Discovery is needed to obtain:

1. Defendant's complete OneNote records to establish the system exists and employees used it as instructed

24

2. Access logs or audit trails showing whether management reviewed Ms. Garner's OneNote entries

3. Communications among management about the WMATA issue showing whether they saw her OneNote entry but ignored it

This discovery will establish that either (a) management never reviewed the OneNote system they instructed employees to use, proving the termination justification was manufactured, or (b) management reviewed Ms. Garner's entry but falsely claimed she failed to communicate, proving deliberate dishonesty under Reeves, 530 U.S. at 147.

Why unavailable: Defendant's complete OneNote system, access logs, and management communications are in Defendant's exclusive possession and control. Plaintiff was locked out of the system upon termination.

### vi.    Contemporaneous Documentation of Performance Issues

*Specific facts to be discovered:* Any contemporaneous documentation of alleged performance deficiencies prior to March 7, 2025; emails or communications discussing performance concerns; any performance improvement plans or warnings issued before March 7.

*Why necessary:* In *Hamilton v. Geithner*, the D.C. Circuit reversed summary judgment where there was "evidence of a significant disparity in the candidates' qualifications, the highly subjective nature of the Secretary's proffered

nondiscriminatory explanation, and the absence of any contemporaneous documentation." 666 F.3d at 1357. Here, as in *Hamilton*, there is (1) a qualifications disparity (90-day "Meets Expectations" vs. sudden "poor performance"), (2) highly subjective explanations ("performance concerns" without metrics), and (3) no contemporaneous documentation (March 7 warning issued same day as emergency). Discovery will confirm the absence of contemporaneous documentation, demonstrating pretext.

*Why unavailable:* Any such documentation is in Defendant's exclusive possession.

All of these facts are discoverable, material to Plaintiff's opposition, and in Defendant's exclusive possession and control. Plaintiff has been unable to obtain them because no discovery has occurred in this one-month-old case. Plaintiff has been diligent—she cannot be faulted for failing to pursue discovery when Defendant filed this motion one month after the case was filed, before any opportunity for a Rule 26(f) conference.

### E.  The Proper Path Forward

The Court should take one of three approaches:

**First :** Disregard the affidavit and exhibits, treat the motion solely as a Rule 12(b)(6) motion based on the pleadings, and deny it (except as to Count III); or

**Second:** Convert to summary judgment under Rule 12(d), but defer ruling and establish a discovery schedule to provide Plaintiff the "reasonable opportunity" Rule 12(d) requires; or

**Third:** Deny the summary judgment motion without prejudice to renew after discovery if either party so desires.

The Court should not grant summary judgment based on Defendant's unilateral presentation of evidence—from a participant in the allegedly discriminatory conversation, no less—before Plaintiff has had any opportunity to conduct discovery. Such a ruling would violate Rule 12(d), contradict *Aka*'s admonition that summary judgment be used "sparingly" in discrimination cases, and deny Plaintiff the fair process the Federal Rules guarantee.

## V. EVEN IF THE COURT CONSIDERS SUMMARY JUDGMENT, MATERIAL DISPUTES OF FACT PRECLUDE JUDGMENT

If the Court converts the motion to one for summary judgment and chooses to reach the merits despite the procedural defects, Defendant's evidence creates genuine disputes of material fact that preclude judgment as a matter of law.

### A.  McAllister's Affidavit Does Not Deny the Central Allegation— Creating a Credibility Dispute That Defeats Summary Judgment

<u>Ms. McAllister's 8,000-word affidavit is conspicuously silent on the central allegation in this case</u>. She does not deny that she and Jennifer Le asked Ms.

27

Garner to "step down from [her] position or transition to part-time due to [her] need to leave for [her] son's emergency." She does not describe what was said during the March 7 conversation. She does not explain why a written warning was issued the same day as a family emergency. She does not address the March 7 conversation at all.

This silence is significant. Ms. McAllister was a direct participant in the conversation. If Plaintiff's allegation were false, one would expect a categorical denial under oath. The absence of any denial permits the inference that the conversation occurred as alleged.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Brady*, 520 F.3d at 494 (citing *Anderson*, 477 U.S. at 255). McAllister's failure to deny the discriminatory statement creates a credibility dispute that defeats summary judgment. Plaintiff is entitled to depose Ms. McAllister and Ms. Le under oath regarding:

- Exactly what was said during the March 7 conversation
- Who initiated the conversation about stepping down or going part-time
- Why that conversation occurred on the same day as a family emergency
- Who made the decision to issue the written warning that same day
- What communications preceded and followed the March 7 conversation

28

Without this testimony, the central factual dispute—what was said and what motivated the adverse actions—cannot be resolved. This is precisely the type of credibility dispute that precludes summary judgment. *Anderson*, 477 U.S. at 255.

## B. Defendant's Own Evidence Creates an Insoluble Problem Regarding the Comparator

Ms. McAllister states in her affidavit: "Plaintiff was Cloe Allen's supervisor and was responsible for disciplinary actions against Ms. Allen in the event of performance or attendance issues." McAllister Aff. ¶ 3.

This is false. At TEFCU, all staff disciplinary decisions were the exclusive responsibility of HR (McAllister herself) and the Chief Administrative Officer (Jennifer Le)—management made this clear to all employees.

This falsehood transforms the comparator analysis. If McAllister (HR) and Le (CAO)—the same two individuals who participated in the March 7 discriminatory conversation—made all disciplinary decisions, then they personally decided to:

- Give Cloe Allen zero discipline for nine family-related absences
- Give Wanda Garner a written warning, 6-day suspension, and termination for two family emergencies

This is direct evidence of disparate treatment by identical decision-makers—the gold standard for comparator evidence. *Brown v. Brody*, 199 F.3d at 452 (same decision-makers critical to comparator analysis). The falsehood about who made

29

disciplinary decisions suggests consciousness of guilt: McAllister attempted to distance herself and Le from the comparator problem by falsely claiming branch managers made disciplinary decisions.

This admission raises an obvious question: If Ms. Garner was responsible for disciplining Ms. Allen, why was Ms. Allen not disciplined for nine family-related absences?

There are only two possible explanations:

- **First:** Upper management instructed Ms. Garner not to discipline Allen for family-related absences, in which case upper management made a deliberate decision to treat Allen more favorably than they treated Garner for similar conduct. This supports disparate treatment.
- **Second:** Ms. Garner exercised her supervisory discretion not to discipline Allen for family-related absences, which demonstrates that such absences were not considered serious infractions requiring discipline. This contradicts Defendant's stated reason for disciplining Garner for family-related absences.

Either explanation creates a genuine issue of material fact regarding discriminatory intent and pretext. Discovery is necessary to determine:

- Which decision-makers were aware of Allen's absences
- Whether Garner was instructed not to discipline Allen

- Whether the same decision-makers who approved leniency for Allen also approved harsh discipline for Garner

- What communications occurred among upper management regarding how to handle family-related absences

In *Brown v. Brody*, the D.C. Circuit held that "employees have been found similarly situated even when they reported to different immediate supervisors if the same decision-makers were involved in the adverse actions." 199 F.3d at 452. The Complaint alleges that disciplinary decisions were made or approved by upper-level management, including CEO Rita Smith and Chief Administrative Officer Jennifer Le. Compl. ¶¶ 22, 50. At minimum, disputed questions regarding whether employees are similarly situated must be resolved in favor of the non-moving party and ordinarily present questions for the jury. *Aka*, 156 F.3d at 1294-95.

### C. The 90-Day Review Contradicts Claims of Poor Performance—Showing Pretext Under Hamilton

Ms. Garner's 90-day performance evaluation, signed by CEO Rita Smith on August 6, 2024, rated her "Meets Expectations" in every single performance category: Work Skills, Communication Skills, Work Quality, Work Ethic, Mission/Vision/Service Excellence Values, and Supervisory/Leadership Skills. McAllister Aff., Ex. 2. The narrative comments were constructive and forward-looking, stating she "has been progressing nicely" and "has dedicated her time to adapting to TEFCU's processes and procedures." *Id.*

31

If Ms. Garner's performance was as deficient as Ms. McAllister now claims, why did her 90-day review—the critical checkpoint for new employees—reflect no performance concerns whatsoever? A reasonable jury could infer that the performance issues cited in the March 7 warning (and thereafter) were pretextual justifications manufactured after Ms. Garner refused to step down due to her family responsibilities.

As in *Hamilton*, where the D.C. Circuit found summary judgment inappropriate based on qualifications disparity and subjective explanations lacking contemporaneous support, here Defendant cannot reconcile Ms. Garner's satisfactory 90-day review with sudden termination based on undocumented performance concerns. 666 F.3d at 1357. This temporal pattern supports pretext:

- July 2024 (90 days): "Meets Expectations" in all categories
- March 7, 2025 (10.5 months): Family emergency → "step down" demand → written warning same day
- April-May 2025: Escalating discipline → termination

The *Hamilton* framework applies directly:

- Qualifications disparity: 90-day "Meets Expectations" vs. sudden "poor performance"
- Highly subjective explanation: Vague "performance concerns" without metrics
- No contemporaneous documentation: March 7 warning issued same day as emergency

32

The shift from satisfactory performance at 90 days to termination at 13 months—with the pivot occurring on the same day as a family emergency and a demand to step down—creates a genuine issue of material fact regarding pretext.

**D. Specific Factual Disputes Preclude Summary Judgment**

**i.       April 16 Notice**

**McAllister's claim**: 'Plaintiff took April 16, 2025, off without approval or advance notice.' McAllister Aff. ¶ 13.

The documentary evidence tells a different story. On April 16 at 7:38 AM, Ms. Garner received a text from her daycare provider: 'Good morning, Wanda I apologize I am going to have to close the center for today and for the rest of the week I wasn't feeling well so I took a Covid test this morning and it is positive.' At approximately 7:48 AM—before the workday began—Ms. Garner forwarded this message to management and offered a solution: bringing her son to her office. McAllister denied this request, stating they 'can't put the rest of the staff at risk.' Compl. ¶¶ 31-33.

Ms. Garner had pre-approved leave for April 17-18, 2025 (her birthday). In her April 28 response to the suspension, Ms. Garner explained: 'I was already scheduled and approved to be off on April 17-18, minimizing any ongoing impact on branch operations, due to this I was unfairly suspended without pay for a week April 16th-23rd.' Garner Decl. 12, Ex.1

33

Defendant weaponized its own attendance policy to manufacture a suspension. McAllister's April 28 response cited TEFCU policy: 'Any callouts, late arrivals, or early departures before an employee's approved scheduled leave (e.g. personal or birthday) will result in the cancellation of the scheduled leave.' Garner Decl. 12, Ex. 1. Because Ms. Garner had an emergency callout on April 16—the day before her pre-approved birthday leave—Defendant cancelled her April 17-18 leave and suspended her for six days.

This reveals the suspension's punitive, retaliatory nature:

- Ms. Garner provided advance notice (7:48 AM text)

- She had no control over the COVID exposure

- She offered a solution (bring son to office)

- She had pre-approved leave for April 17-18

- Result: 6-day unpaid suspension for one emergency

Moreover, in her written response, Ms. Garner stated: 'All instances of Leave Without Pay (LWOP) were approved by management.' If management pre-approved LWOP on a case-by-case basis as the February 27 meeting notes indicated, the characterization of April 16 as 'unauthorized' is false. These factual disputes preclude summary judgment and demonstrate pretext."

### ii.   WMATA Issue Documentation

**Termination letter claim:** Ms. Garner failed to timely communicate the WMATA payroll issue. McAllister Aff., Ex. 10.

**Plaintiff's evidence:** Ms. Garner has a printed copy of the February 19, 2025, OneNote entry documenting the WMATA payroll issue. Garner Decl. ¶ 14, Ex. 2. The entry states: "Due to WMATA outsourcing their payroll department, members who normally receive early release payroll, has been delayed... When we reached out to accounting in January to see if there was anything that we could do on our end to remedy this, there was no solution. Please share your thoughts. (2/19/25)." *Id.*

This entry demonstrates Ms. Garner (1) documented the issue on February 19 as instructed, (2) reached out to accounting in January, and (3) asked management for guidance. The termination letter's claim that she failed to communicate this issue is demonstrably false, establishing pretext under *Reeves*, 530 U.S. at 147.

### iii.    Performance

**McAllister's claim:** "During her tenure, Plaintiff's performance was poor." McAllister Aff. ¶ 4.

**Contradictory evidence:**

1.  90-day evaluation: "Meets Expectations" in all six categories. McAllister Aff., Ex. 2.

2. DC Employment Services: Defendant "failed to provide evidence that the claimant failed to successfully perform his/her job duties." Compl. ¶ 53.

3. Four former employees: Described her performance as satisfactory. Compl. ¶¶ 57-63.

When an employer's performance characterization is contradicted by a satisfactory evaluation, an independent administrative finding, and witness corroboration, a genuine dispute exists. *Aka*, 156 F.3d at 1289-91.

### E. The Unemployment Decision and Severance Offer Support Pretext

DC Employment Services reviewed Defendant's evidence and concluded that Defendant "failed to provide evidence that the claimant failed to successfully perform his/her job duties." Compl. ¶ 53. While unemployment determinations are not binding in discrimination litigation, they constitute probative evidence of pretext because they show whether an employer could substantiate its stated reasons when required to present evidence to a neutral adjudicator.

One day after the unemployment decision, Defendant offered Ms. Garner severance in exchange for a release. Compl. ¶¶ 54-55. The timing suggests that Defendant recognized the weakness of its stated reasons for termination. Employers with well-documented, legitimate grounds for termination do not typically rush to offer severance immediately after losing an unemployment proceeding.

36

Defendant moves to strike the severance offer under Federal Rule of Evidence 408. The motion is premature—Rule 408 issues should be resolved by motion in limine after discovery, not on a motion to dismiss or summary judgment. Moreover, this evidence is offered to show Defendant's consciousness of the weakness of its stated reasons for termination—the classic definition of pretext under *Reeves*—not to establish liability.

The temporal sequence is probative: (1) Defendant terminates Ms. Garner for alleged performance deficiencies; (2) DC Employment Services finds "no evidence" supporting those reasons; (3) the next day, Defendant offers severance to obtain a release. This compressed timeline demonstrates Defendant recognized its stated reasons would not withstand scrutiny. This evidence is offered to show Defendant's consciousness of the weakness of its stated reasons for termination—a permissible purpose under Federal Rule of Evidence 408(b), which allows settlement evidence when "offered for purposes not prohibited by subdivision (a)." *See Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 362 (8th Cir. 2000); *Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349, 353-54 (4th Cir. 1992). It is not offered to establish liability or the amount of damages through an offer of compromise. Defendant's Motion to Strike should therefore be denied If the Court has concerns about the scope of this evidence, a limiting instruction would be appropriate. At minimum, the motion to strike should be denied without prejudice to renewal at trial.

## F. Credibility Determinations Are for the Jury

37

Ms. McAllister's version conflicts with Plaintiff's allegations, the unemployment decision, witness statements, and documentary evidence discovery will reveal. These conflicts create credibility disputes that only a jury can resolve. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

The central questions—what was said during the March 7 conversation, what motivated the adverse actions, and whether Defendant's stated reasons are pretextual—depend on assessments of witness credibility that cannot be made on summary judgment, particularly before any depositions have been taken.

## VI. CONCLUSION

Defendant's motion should be denied for four independent reasons:

**First**, the motion is procedurally improper. Defendant submitted an affidavit from a participant in the allegedly discriminatory conversation before any discovery occurred, violating Rule 12(d)'s requirement that Plaintiff have "a reasonable opportunity to present all the material that is pertinent to the motion." Summary judgment should be used sparingly in employment discrimination cases. *Aka*, 156 F.3d at 1288.

**Second**, the Complaint states plausible claims. In *Waterhouse*, the D.C. Circuit recognized that "statements revealing discriminatory motivation are highly

probative" of discriminatory intent. 298 F.3d at 993. The March 7 conversation constitutes direct or highly probative evidence of sex discrimination. The subsequent pattern of escalating discipline, positive prior performance review, disparate treatment of a comparator employee, the unemployment decision, and the post-termination severance offer create plausible inferences of discriminatory and retaliatory intent that easily survive dismissal.

**Third**, Defendant's evidence creates genuine disputes of material fact rather than resolving them. Ms. McAllister's affidavit does not deny the March 7 conversation, contradicts the unemployment decision and the 90-day performance review, and creates an insoluble problem regarding the comparator. As in *Hamilton*, there is evidence of qualifications disparity, highly subjective explanations, and absence of contemporaneous documentation—all precluding summary judgment. Critical factual disputes—including whether Ms. Garner provided notice on April 16, whether she documented the WMATA issue, what was said during the March 7 conversation, and why Cloe Allen received no discipline for family-related absences—can only be resolved through discovery and, likely, trial.

**Fourth**, no discovery has occurred in this one-month-old case. Plaintiff is entitled to discovery regarding the March 7 conversation, the decision-making process, communications among management, comparator treatment, and documentary evidence demonstrating pretext and discriminatory intent before the Court considers summary judgment. As the D.C. Circuit has held, discriminatory

39

intent "often must be inferred from circumstantial evidence found in affidavits and depositions." *Aka*, 156 F.3d at 1288.

Plaintiff respectfully requests that the Court:

1. **Dismiss Count III** (DCFMLA) without prejudice, as Plaintiff concedes she had not completed twelve months of employment;

2. **Deny Defendant's Motion to Dismiss as to Counts I, II, IV, and V**;

3. **Deny Defendant's Motion for Summary Judgment**, or in the alternative, defer ruling pending discovery pursuant to Federal Rule of Civil Procedure 56(d); and

4. **Deny Defendant's Motion to Strike paragraphs 53-56** of the Complaint, or deny without prejudice to renewal at trial.

The March 7 conversation—undenied by Defendant—establishes a direct link between Ms. Garner's family responsibilities and adverse employment actions. The escalating discipline, positive prior performance, documentary contradictions, unemployment decision, post-termination severance offer, and corroborating witnesses create genuine disputes of material fact that preclude summary judgment.

40

Dated: 12/31/25                          Respectfully Submitted,

                                         QUINN PATTON LC

                                         /s/ Donald Quinn
                                         Donald Quinn, Fed. Bar No. 1738652
                                         Quinn Patton, LC
                                         838 Ritchie Highway, Suite 4
                                         Severna Park, Maryland 21146
                                         (443)247-5444 / (202) 508-3644
                                         donquinn@quinnpatton.com
                                         *Attorney for the Plaintiff*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of December 2025, a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment was filed electronically via the Court's CM/ECF system. All counsel and parties of record who are registered CM/ECF users will be served by the Court's CM/ECF system.

/s/ Donald Quinn

Donald G. Quinn

42