**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WANDA GARNER,<br><br>*Plaintiff*,<br><br>v.<br><br>TRANSIT EMPLOYEES FEDERAL CREDIT UNION,<br><br>*Defendant*. | Civil Action No. 25 - 4024 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wanda Garner brings this action against her former employer, the Transit Employees Federal Credit Union ("TEFCU"). ECF No. 1. She asserts that TEFCU discriminated and retaliated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, discriminated and retaliated against her based on her "family responsibilities" in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, and discriminated against her because she asserted her right to paid leave in violation of the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 *et seq.* ECF No. 1 ¶¶ 69-100. For Ms. Garner's Title VII and DCHRA claims, TEFCU has moved for summary judgment under Federal Rule of Civil Procedure 56, ECF No. 5, or, in the alternative, to dismiss for failure to state a claim under Rule 12(b)(6), ECF No. 5-2, at 1, 4. TEFCU also seeks dismissal of the DCFMLA claim for failure to state a claim, *id.* at 6-7. Finally, TEFCU asks the court to strike several paragraphs from Ms. Garner's complaint. *Id.* at 7. For the reasons explained below, the court grants TEFCU's motion to the extent it requests dismissal the DCFMLA claim, denies the rest of the motion, and orders Ms. Garner's counsel to show cause why he should not

be sanctioned for including incorrect and misleading citations and quotations in his opposition brief, ECF No. 7.

## I. FACTUAL BACKGROUND

Although TEFCU has moved for summary judgment and provided materials outside the complaint for the court's consideration, ECF Nos. 5, 5-3, 10-1, the court resolves TEFCU's motion to dismiss and concludes that summary judgment is premature. Accordingly, the court accepts the following factual allegations from Ms. Garner's complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). TEFCU is a federal credit union that operates a branch in the District. ECF No. 1 ¶¶ 7-8. In April 2024, Ms. Garner began working at TEFCU as an Assistant Branch Manager. *Id.* ¶ 11. Within a week, "the Branch Manager resigned abruptly" and Ms. Garner was promoted to Acting Branch Manager. *Id.* ¶ 12. TEFCU's branch in the District suffered from "severe understaffing and [a] lack of training." *Id.* ¶ 14.

On March 7, 2025, Ms. Garner's three-year-old son "experienced a medical emergency" and began "vomiting repeatedly and [was] unable to keep food down." *Id.* ¶ 15. Ms. Garner had reported for work that morning but informed her supervisor, TEFCU Chief Administrative Officer Jennifer Le, that she "needed to leave" by 1:00 p.m. "to take her son to the emergency room." *Id.* ¶¶ 16-17. Danielle McAllister, a human resources manager, then asked if Ms. Garner could remain at work until 3:00 p.m., but Ms. Garner informed her that doing so was not an option. *Id.* ¶¶ 18-19. While Ms. Garner was working, her son's babysitter called again to inform her that her son "was gagging and had vomited again." *Id.* ¶ 20. Around 1:20 p.m., Ms. Garner had a phone call with Ms. Le and Ms. McAllister; during that conversation, they asked her whether she wanted to "step down from [her] position or transition to part-time due to [her] need to leave for [her] son's emergency." *Id.* ¶ 22 (alterations in original). Ms. Le and Ms. McAllister also mentioned that

Ms. Garner was taking care of her young niece and nephew. *Id.* ¶ 23. When Ms. Garner asked why a permanent employment change was necessary in response to a temporary family situation, Ms. Le stated, "Wanda, this conversation is over." *Id.* ¶¶ 24-25. "Immediately before [Ms. Garner] left [work] to take her son to the emergency room," TEFCU "issued her a written warning . . . regarding previously discussed and resolved operational matters from a February 27, 2025 meeting." *Id.* ¶ 26. Ms. Garner asserts that, following her March 7 conversation with Ms. Le and Ms. McAllister, she began to experience work-related stress, including migraines that required her go to the emergency room. *Id.* ¶ 29. This was due to the "escalating targeting and discipline" that Ms. Garner received "despite maintaining professional conduct and working extended hours to meet operational demands." *Id.* ¶ 28.

Ms. Garner had preapproved paid leave scheduled for April 17 and April 18, 2025. *Id.* ¶ 35. The day before her leave was scheduled to begin, she received a text message from her son's daycare provider, explaining that the provider had tested positive for COVID-19 and needed to close the daycare center for the day. *Id.* ¶ 31. Ms. Garner immediately informed Ms. Le and Ms. McAllister about her son's inability to go to daycare and asked if she could bring her son to work. *Id.* ¶ 32. Ms. McAllister responded that Ms. Garner could not bring her son to work because TEFCU "can't put the rest of the staff at risk if there's a concern" for COVID-19 exposure. *Id.* ¶ 33. Ms. Garner thus was absent on that day but "acknowledged and apologized for the unavoidable absence." *Id.* ¶¶ 34, 36. In response, TEFCU suspended Ms. Garner for six days. *Id.* ¶ 36. Ms. Garner submitted a written response to the suspension on April 28, explaining that circumstances related to COVID-19 had caused her April 16 absence and that she was receiving "disparate treatment compared to other employees." *Id.* ¶ 39. According to Ms. Garner, another

employee named Cloe Allen had not received any written warnings, suspensions, or disciplinary action for her absences. *Id.* ¶ 38.

Also in April and May 2025, Ms. Le denied Ms. Garner's two requests for leave—one for her mental health "due to work-related stress," and another for a family member's memorial service. *Id.* ¶¶ 41-45. In May, Ms. McAllister called Ms. Garner to schedule an annual performance review. *Id.* ¶ 46. When Ms. Garner arrived for her review on May 16, Ms. Le and Ms. McAllister gave her a letter indefinitely suspending her, which was effectively a termination. *Id.* ¶ 47. In the letter, TEFCU stated that Ms. Garner (1) had failed to "communicate about WMATA payroll issues," (2) had inadequately managed service events and member services, and (3) had "attendance issues." *Id.* ¶ 49. Ms. Garner disputes each conclusion in the letter, explaining that (1) she documented the WMATA payroll issues in January and February 2025 as she had been instructed to do, (2) any service issues were the result of TEFCU's "severe understaffing" issues, and (3) her leave had all been "pre-approved" and she maintained a better attendance record than Ms. Allen, who was not similarly disciplined. *Id.* ¶¶ 49-51.

Ms. Garner subsequently submitted a claim for unemployment compensation to the D.C. Department of Employment Services. *Id.* ¶ 53. The agency approved her claim on the basis that TEFCU had "failed to provide evidence that [Ms. Garner had] failed to successfully perform . . . her job duties." *Id.* The day after her unemployment compensation claim was favorably processed, TEFCU sent Ms. Garner a settlement offer that included severance pay "in exchange for releasing all claims." *Id.* ¶ 54. Ms. Garner did not sign the agreement. *Id.* ¶ 55.

## II. PROCEDURAL HISTORY

After her termination, Ms. Garner filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 1 ¶ 4. The EEOC issued her a notice

on September 4, 2025, explaining her right to file a civil suit. *Id.* Ms. Garner filed this action on November 18, 2025. *Id.* at 20. Her complaint raises five claims: (1) sex discrimination under Title VII (Count I); (2) retaliation under Title VII (Count II); (3) "family leave discrimination" under the DCFMLA (Count III); (4) "family responsibilities discrimination" under the DCHRA (Count IV);[1] and (5) retaliation under the DCHRA (Count V). ECF No. 1 ¶¶ 69-100. She seeks declaratory relief, reinstatement or front pay, back pay, compensatory and punitive damages, attorney's fees and costs, and pre- and post-judgment interest. *Id.* at 18-19.

TEFCU filed a motion for summary judgment a month after Ms. Garner filed her complaint. *See* ECF No. 5. It seeks summary judgment on Counts I, II, IV, and V—or, alternatively, dismissal of those counts for failure to state a claim. ECF No. 5-2, at 4-6. TEFCU requests dismissal of Count III only for failure to state a claim. *Id.* at 6-7. And it asks the court to strike paragraphs 53 through 56 of Ms. Garner's complaint, which contain allegations related to her claim for unemployment compensation, ECF No. 1 ¶ 53, and the alleged settlement offer, *id.* ¶¶ 54-56. The motion is fully briefed. ECF Nos. 5-2, 7, 10.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006));

[1] Ms. Garner includes her DCHRA discrimination claim as Count VI in her complaint, even though it appears between Count III and Count V and she raises only five substantive claims. The court accordingly refers to the DCHRA discrimination claim as Count IV.

*see* Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the moving party bears the burden of demonstrating "the absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in her favor, *see Liberty Lobby*, 477 U.S. at 248; *Allen v. Johnson*, 795 F.3d 34, 38-39 (D.C. Cir. 2015).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (quoting *Liberty Lobby*, 477 U.S. at 255); *see Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295-96 (D.C. Cir. 2015). Accordingly, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (first alteration in original) (quoting *Liberty Lobby*, 477 U.S. at 255). However, the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [her] position," *Liberty Lobby*, 477 U.S. at 252, and she may not rely on "mere allegations" or conclusory statements, *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011) (quoting *Sierra Club v. Env't Prot. Agency*, 292 F.3d 895, 899 (D.C. Cir. 2002)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

Rule 56(d) provides a mechanism for a party opposing a summary judgment motion to assert "specified reasons" why she "cannot present facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d). If she can make that showing "by affidavit or declaration," the court may "defer considering the motion or deny it," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order." *Id.* R. 56(d)(1) to (3). "To obtain relief, a Rule 56(d) movant must" satisfy the so-called *Convertino* criteria and "(1) 'outline the particular facts [the party defending against summary judgment] intends to discover and describe why those facts are necessary to the litigation'; (2) explain why the party could not produce those facts in opposition to the pending summary judgment motion; and (3) 'show [that] the information is in fact discoverable.'" *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (alterations in original) (quoting *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012)). "Though '[s]ummary judgment usually "is premature unless all parties have had a full opportunity to conduct discovery,"' . . . a Rule 56(d) motion 'must be resolved through "application of the *Convertino* criteria to the specific facts and circumstances presented in the request," rather than on the basis of presumptions about a given stage of litigation.'" *Id.* (quoting *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019)). "Trial courts have a broad discretion in discovery matters" and the denial of a Rule 56(d) motion is reviewed for abuse of discretion. *Id.* (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)); *see Cruz v. McAleenan*, 931 F.3d 1186, 1191 (D.C. Cir. 2019) (same).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

**C. Federal Rule of Civil Procedure 12(f)**

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision to strike is "vested in the trial judge's sound discretion," but "a motion to strike is a drastic remedy that courts disfavor." *Shaw v. District of Columbia*, No. 17-CV-738, 2018 WL 5044248, at *2 (D.D.C. Sep. 11, 2018) (quoting *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011)); *see United States v. Three Sums Totaling $612,168.23 in Seized U.S. Currency*, No. 19-CV-130, 2021 WL 2255310, at *4 (D.D.C. June 3, 2021) ("[A]bsent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings.'" (quoting *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 190 (D.D.C. 2005))). "In considering a motion to strike, courts will draw all reasonable inferences in

the pleader's favor and resolve all doubts in favor of denial of the motion to strike." *Crawford v. Barr*, No. 17-CV-798, 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) (quoting *Moore v. United States*, 318 F. Supp. 3d 188, 190-91 (D.D.C. 2018)). Although Rule 12(f) does not require a showing of prejudice, "[o]nly if the allegations in [the pleading] are both irrelevant and prejudicial . . . will a motion to strike be granted." *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 252 (D.D.C. 2021). "In the rare instance that a motion to strike is granted, the submission to which it is directed 'should be pruned with care,' rather than completely scrapped." *Meyer v. Panera Bread Co.*, No. 17-CV-2565, 2018 WL 5017747, at *4 (D.D.C. Oct. 16, 2018) (quoting *Johnson v. M&M Commc'ns, Inc.*, 242 F.R.D. 187, 189 (D. Conn. 2007)).

## IV. DISCUSSION

### A. The DCFMLA Claim (Count III)

Ms. Garner raises a discrimination claim under the DCFMLA, which entitles employees in the District to family and medical leave, including leave for the care of a family member with a "serious health condition." D.C. Code § 32-502(a)(4); *see* ECF No. 1 ¶¶ 85-93. She alleges that TEFCU took adverse action against her because she asked for family leave during her son's medical emergency. ECF No. 1 ¶¶ 85-93. TEFCU argues that dismissal of the DCFMLA claim is warranted because the statute only protects employees who have been "employed by the same employer for at least 12 consecutive or non-consecutive months . . . in the 7 years immediately preceding the date on which the period of family or medical leave is to commence," D.C. Code § 32-501(1)(A)(i), and Ms. Garner had not been employed by TEFCU for the requisite duration, *see* ECF No. 5-2, at 6-7. In response, Ms. Garner concedes that dismissal is appropriate because she did not "complete[] twelve months" of qualifying employment before TEFCU terminated her.

ECF No. 7, at 15. Accordingly, and with the parties' consent, the court grants TEFCU's motion as it concerns the DCFMLA claim and dismisses Count III with prejudice under Rule 12(b)(6).

**B. The Remaining Claims (Counts I, II, IV, and V)**

TEFCU seeks summary judgment under Rule 56, or in the alternative, dismissal under Rule 12(b)(6) of Ms. Garner's Title VII discrimination (Count I) and retaliation (Count II) claims, as well as her DCHRA discrimination (Count IV) and retaliation (Count V) claims. ECF No. 5-2, at 4-6. TEFCU also asks the court to strike four paragraphs from the complaint that concern Ms. Garner's unemployment claim and TEFCU's purported settlement offer, arguing that any evidence concerning those allegations is inadmissible under the Federal Rules of Evidence. *Id.* at 7-8; *see* ECF No. 1 ¶¶ 53-56. Ms. Garner responds that she has sufficiently alleged discrimination and retaliation under both Title VII and the DCHRA for purposes of Rule 12(b)(6). ECF No. 7, at 7-15. She further contends that summary judgment would be improper at this early stage in the litigation, *id.* at 16-27, and she has filed a sworn declaration describing the discovery she would need to adequately oppose TEFCU's summary judgment motion, ECF No. 7-1, *see* ECF No. 7, at 18-26 (describing the necessary discovery). In the event the court elects to resolve TEFCU's motion for summary judgment on the merits, Ms. Garner maintains that genuine issues of material fact warrant denying the motion. ECF No. 7, at 27-38. Finally, she argues that striking any material from the complaint would be inappropriate because the allegations do not concern inadmissible evidence. *Id.* at 36-37.

The court first concludes that summary judgment is premature because, pursuant to Rule 56(d), Ms. Garner has identified necessary discovery to oppose TEFCU's motion. On TEFCU's motion to dismiss, the court holds that TEFCU has forfeited its argument about dismissal for failure to state a claim, and that it would be inappropriate to consider its summary judgment

arguments under the Rule 12(b)(6) standard. The court next determines that the motion to strike is both procedurally deficient and premature, but that TEFCU may reraise its arguments at summary judgment or in a motion *in limine* before any trial. Finally, the court directs counsel for Ms. Garner to show cause why he should not be sanctioned for including incorrect and misleading citations and quotations in his opposition brief, ECF No. 7, and explaining whether he used generative artificial intelligence when writing the brief.

**1. Motion for summary judgment**

In TEFCU's view, summary judgment is appropriate because Ms. Garner cannot prevail under the evidentiary framework from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). "At the first step of the familiar three-step inquiry, the plaintiff bears the 'initial burden' of 'establishing a prima facie case' by producing enough evidence to support an inference of discriminatory motive." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 (2025) (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the plaintiff clears that hurdle, the burden then 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 308-09 (quoting *McDonnell Douglas*, 411 U.S. at 802). "Finally, if the employer articulates such a justification, the plaintiff must then have a 'fair opportunity' to show that the stated justification 'was in fact pretext' for discrimination." *Id.* at 309 (quoting *McDonnell Douglas*, 411 U.S. at 804).

TEFCU asserts that it terminated Ms. Garner because of "her performance issues and attendance problems" and that she now bears—but cannot satisfy—the "burden of persuasion" of showing that TEFCU's stated non-discriminatory reasons are pretextual. ECF No. 5-2, at 5-6. In response, Ms. Garner asks the court to deny the motion for summary judgment as premature because discovery is necessary for her to uncover "facts essential to justify [her] opposition"—or

because there are genuine issues of material fact that a jury must decide. Fed. R. Civ. P. 56(d); *see* ECF No. 7, at 16-40. The court agrees with Ms. Garner that she is entitled to relief under Rule 56(d) because she has identified discovery necessary to oppose TEFCU's motion for summary judgment. The court thus declines to consider the *McDonnell Douglas* evidentiary framework and denies TEFCU's request for summary judgment.

In her sworn declaration, Ms. Garner asserts that she needs discovery concerning six categories of information:

(1) Information, including records and deposition testimony, from Ms. Le and Ms. McAllister about the March 7, 2025 conversation, during which Ms. Garner asked to leave work early because of her son's medical emergency and was asked whether she wanted to "step down from [her] position or transition to part-time" because of her son's emergency. ECF No. 7-1, at 2 ¶¶ 4-7.[2]

(2) Various documents—including her own text messages, records showing that her paid leave was approved, and TEFCU's leave policy—that Ms. Garner contends are relevant to her April 16, 2025 conversation with Ms. McAllister, which resulted in a six-day suspension. *Id.* at 2-3 ¶¶ 8-13.

(3) TEFCU's OneNote records, which Ms. Garner argues will undermine or contradict TEFCU's stated non-discriminatory reason for terminating her. *Id.* at 3-4 ¶¶ 14-16.

(4) Attendance records, the disciplinary file, and TEFCU's emails concerning Ms. Allen, whom Ms. Garner identifies as a comparator. *Id.* at 4 ¶¶ 17-22.

(5) Performance complaints or documents related to Ms. Garner that would substantiate TEFCU's asserted non-discriminatory reason for the termination. *Id.* at 5 ¶¶ 23-26.

(6) Emails, texts, and messages among CEO Rita Smith, Ms. Le, and Ms. McAllister concerning the March 7 conversation, the April 16 suspension, the May 16 termination, management's treatment of Ms. Allen, and Ms. Garner's "family responsibilities or [her] kids." *Id.* at 5 ¶ 27.

For all but the text messages in the second category, the court concludes that Ms. Garner has carried her burden under Rule 56(d) of identifying facts needed to defend against summary

---

[2] When citing ECF Nos. 5-3 and 7-1, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

judgment, describing why those facts are necessary to the litigation, explaining why she cannot produce the information now, and showing that the missing materials are discoverable. *Jeffries*, 965 F.3d at 855.[3]

On the first *Convertino* factor, the court is satisfied that Ms. Garner has adequately alleged *why* she needs discovery to oppose summary judgment. Ms. Garner provides a succinct explanation for each type of discovery she seeks. Deposing Ms. Le and Ms. McAllister is important because Ms. McAllister never denies in her declaration that she and Ms. Le told Ms. Garner on March 7, 2025 to either quit or work part-time because of her role as a caretaker. ECF No. 7-1, at 2 ¶¶ 6-7; *see* ECF No. 5-3, at 1-3. TEFCU's leave policy and leave approval records are necessary because Ms. Garner declares that some will contradict Ms. McAllister's affidavit in support of TEFCU's asserted non-discriminatory reason for the termination. ECF No. 7-1, at 3 ¶¶ 11-13. The OneNote records are critical because they may be consistent with Ms. Garner's pretext argument—that certain alleged performance issues are "a lie." *Id.* at 3-4 ¶¶ 15-16. Records related to Ms. Allen are necessary for Ms. Garner to prove that she was treated differently than another TEFCU employee, which may contradict Ms. McAllister's affidavit. *Id.* at 4 ¶ 20. And, to establish pretext, Ms. Garner seeks confirmation that there are no documented performance complaints prior to March 7. *Id.* at 5 ¶ 25.

What is more, Ms. Garner's explanation for why she needs discovery is consistent with her briefing, her theory of the case, and binding precedent in employment discrimination cases. *See* ECF No. 7, at 20-27 (providing further argument consistent with Ms. Garner's declaration);

[3] The court declines to consider the assertion that Ms. Garner needs "the text messages from April 16," ECF No 7-1, at 3 ¶ 13, because she was a party to those communications, *id.* at 2 ¶ 8; *see* ECF No. 7, at 23 (explaining that the facts to be discovered include "[t]ext messages from Ms. Garner to management"), and she has not asserted that she lacks access to the messages.

*Jeffries*, 965 F.3d at 855 (explaining that the D.C. Circuit has "regularly looked beyond a litigant's declaration to h[er] briefing in analyzing whether the *Convertino* elements have been satisfied"). Because TEFCU contends that its termination decision is supported by Ms. Garner's alleged performance and attendance issues, ECF No. 5-2, at 5; *see* ECF No. 5-3, Ms. Garner may defend against summary judgment by showing direct evidence of discrimination and retaliation *or* that any performance- or attendance-related issues TEFCU has identified were pretext for her employer's discriminatory and retaliatory motives.

Direct evidence "usually takes the form of a 'statement that itself shows . . . bias [against a protected class] in the [employment] decision." *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020) (alterations in original) (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam)). When offered in opposition to a summary judgment motion, it is "sufficient on its own to entitle a plaintiff to a jury trial." *Id.* And discovery can be a critical tool for uncovering direct evidence of discrimination or retaliatory motive. *See Chappell-Johnson v. Powell*, 440 F.3d 484, at 488-89 (D.C. Cir. 2006) (holding that a district court abused its discretion by granting summary judgment and denying a Rule 56(d) motion in part because "discovery may even uncover direct evidence of discrimination"). As for pretext, the discovery Ms. Garner seeks "could call into question the veracity of [TEFCU's] proffered reason" for terminating her. *Jeffries*, 965 F.3d at 858 (holding that one portion of the plaintiff's Rule 56(d) declaration was sufficient because the evidence he was seeking could undermine the defendant's "legitimate, nondiscriminatory reason for [his] nonselection").

With the first *Convertino* factor established, the court easily concludes that Ms. Garner has satisfied the second and third factors—explaining why she cannot produce this discovery herself and showing that the information is discoverable. The court has no basis at this early stage in the

litigation to doubt that TEFCU alone has access to its internal policies and employee records, and the deposition testimony Ms. Garner seeks is "not available to her yet." *Moore-Davis v. U.S. Dep't of the Navy*, 694 F. Supp. 3d 116, 126 (D.D.C. 2023) (denying summary judgment motion as premature before discovery had commenced because the plaintiff's counsel had explained which depositions would be necessary); *see* ECF No. 7-1, at 2-7 ¶¶ 7, 13, 16, 21-22, 26, 29. And the court "sees no reason why the facts [Ms. Garner] seeks would not be discoverable once discovery does begin." *Moore-Davis*, 694 F. Supp. 3d at 126.[4]

TEFCU offers no specific response to Ms. Garner's Rule 56(d) request. Indeed, its opposition is so cursory that the argument is conceded. TEFCU maintains that "[Ms. Garner's] Declaration is nothing more than conclusory allegations unsupported by facts that create a material dispute of relevant facts," and that "[n]one of the discovery that [Ms. Garner] suggests she needs can establish any evidence of pretext or discriminatory intent to overcome her well documented performance and attendance issues." ECF No. 10, at 3-4. But "[m]entioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it." *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). In failing to argue *why* the discovery Ms. Garner seeks cannot lead to direct evidence of discrimination or evidence of pretext, TEFCU has done little more than restate the first *Convertino* factor. In any event, TEFCU's barebones argument is also unpersuasive on the merits. TEFCU

[4] Indeed, TEFCU has provided some of the information Ms. Garner requests as discovery in an exhibit to its reply brief, ECF No. 10-1, indicating that the information is discoverable. Of course, this information comes too late to be useful to Ms. Garner in opposing TEFCU's current motion for summary judgment, but the court is hopeful that TEFCU's provision of this information will make discovery more efficient.

contends that the declaration relies on conclusory assertions, but the court has explained that Ms. Garner has adequately stated what discovery she seeks, why it is necessary, why she cannot produce it herself, and that it is, in fact, discoverable. *See supra* pp. 11-13. And, while TEFCU believes that the declaration cannot overcome Ms. Garner's performance and attendance issues, it fails to contend with Ms. Garner's assertion that evidence produced in discovery will undermine or contradict the issues that TEFCU claims supported its termination decision. *See* ECF No. 7-1, at 2-7 ¶¶ 6-7, 13, 20, 25. Accordingly, the court denies TEFCU's summary judgment motion as premature. *See* Fed. R. Civ. P. 56(d)(1) (allowing the court to deny a summary judgment motion if the plaintiff has met Rule 56(d)'s requirements).

**2. Motion to dismiss**

Although TEFCU captions its motion as one for summary judgment, ECF No. 5, the motion also contains one paragraph about why Ms. Garner "fails to state a claim," ECF No. 5-2, at 4. The remainder of TEFCU's motion—aside from the argument about the DCFMLA claim and the purportedly improper allegations of a settlement offer—addresses why TEFCU is "entitled to judgment as a matter of law." *Id.* at 4-7. But even the sole paragraph TEFCU has devoted to its Rule 12(b)(6) motion lacks any explanation of why Ms. Garner has failed to plausibly plead Title VII and DCHRA discrimination and retaliation. Nor does TEFCU argue in its reply why dismissal (rather than summary judgment) is appropriate. *See generally* ECF No. 10.[5]

"Because courts are 'essentially passive instruments of government,' [the parties must] 'frame the issues for decision.'" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288

[5] Even if TEFCU had asserted a persuasive basis for dismissal in its reply brief, that would not have saved its defective motion because "new arguments made in a reply brief are forfeited," *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 n.4 (D.D.C. 2016).

(2026) (per curiam) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). As with TEFCU's response to Ms. Garner's Rule 56(d) argument, TEFCU has not developed its justification for a Rule 12(b)(6) dismissal. It once again "leav[es] the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Al-Tamimi*, 916 F.3d at 6 (quoting *Schneider*, 412 F.3d at 200 n.1). TEFCU has therefore forfeited any argument for why Counts I, II, IV, and V should be dismissed under Rule 12(b)(6). *See id.*

Even if the court considered whether TEFCU's arguments supporting summary judgment also favored dismissal, the court would still deny the Rule 12(b)(6) motion. That is because TEFCU focuses its arguments solely on the *McDonnell Douglas* burden-shifting framework and Ms. Garner's purported inability to establish pretext. *See* ECF No. 5-2, at 4-6. But *McDonnell Douglas* provides an "evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). To survive a motion to dismiss, a plaintiff need only plausibly plead facts that raise an inference of discrimination—and "pleading each element of the general prima facie case [under *McDonnell Douglas*] is sufficient, even if not necessary, to survive a Rule 12(b)(6) motion to dismiss." *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 85-86 (D.D.C. 2018). By focusing solely on the final step of the *McDonnell Douglas* framework, TEFCU has offered no argument for why Ms. Garner has not satisfied the relatively lower standard that Rule 12(b)(6) imposes. *See* ECF No. 5-2, at 4-6; ECF No. 10, at 2-6.

### C. Motion to Strike

TEFCU asks the court to strike paragraphs 53 through 56 of Ms. Garner's complaint on the theory that the allegations refer to "highly prejudicial" and inadmissible evidence under Federal Rule of Evidence 408. Under that rule, evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise [a] claim" is "not

admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. According to TEFCU, Ms. Garner has inappropriately alleged that (1) the District's "Department of Employment Services approved [her] unemployment claim" after concluding that TEFCU did not provide evidence of her poor job performance, ECF No. 1 ¶ 53; (2) a day later, TEFCU offered her a settlement agreement with severance pay "in exchange for releasing all claims," *id.* ¶ 54; (3) she "declined to signed the agreement," *id.* ¶ 55; and (4) TEFCU's offer "demonstrates consciousness of wrongful conduct," *id.* ¶ 56. Ms. Garner responds that the motion to strike is premature, that the Department of Employment Services' determination on her request for unemployment compensation helps establish "pretext" because it shows whether "TEFCU could substantiate its stated reasons when required to present evidence to a neutral adjudicator," and that TEFCU's settlement offer shows its "consciousness of the weakness" of the asserted "reasons for terminat[ing]" her. ECF No. 7, at 36-37. The court concludes that TEFCU's request is procedurally improper, and it agrees with Ms. Garner that, even if the request had been properly presented, any motion to strike is premature.

To begin, TEFCU did not file a motion to strike under Rule 12(f)—its sole motion, ECF No. 5, is styled a motion for summary judgment. At no point in that motion or its memorandum in support does TEFCU identify Rule 12(f) as a basis for striking material from Ms. Garner's pleading, let alone provide any authority for why granting a Rule 12(f) motion would be appropriate under the circumstances. *See* ECF No. 5-2, at 7. Nor does Rule 408 support TEFCU's argument—at least at this stage in the litigation. Rule 408 "promote[s] the settlement of disputes outside the judicial process," but it "promote[s] this goal through limits on the *admissibility* of settlement material rather than limits on their *discoverability*." *In re Subpoena Issued to*

*Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005), *aff'd in part on other grounds*, 439 F.3d 740 (D.C. Cir. 2006); *see NAACP Legal Def. Fund & Educ. Fund, Inc. v. U.S. Dep't of Just.*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) ("[T]he sole means used to effectuate [Rule 408's] end is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial."). Rule 408 "was never intended to be a broad discovery privilege," let alone a pleading standard. *NAACP Legal Def. Fun & Educ. Fund*, 612 F. Supp. at 1146. Here, without copies of the unemployment compensation decision or the settlement offer—and "without 'the context of an ongoing and unfolding trial'"—the court "cannot conclude" that evidence relating to Ms. Garner's allegations "would be inadmissible for all purposes." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 401 (S.D.N.Y. 2021) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)); *cf. Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 91 (D.D.C. 2024) (explaining that under D.C. Circuit precedent, a settlement letter can be used to "establish an independent violation ([such as], retaliation) unrelated to the underlying claim which was the subject of the correspondence (race discrimination)" (alteration in original) (quoting *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998))). Accordingly, the court denies TEFCU's phantom request to strike without prejudice to reraising the argument when it is ripe.

### D. Show-Cause Order

Finally, the court notes that Ms. Garner's opposition brief, ECF No. 7, is littered with incorrect and misleading citations and quotations. It is unacceptable to file briefs "containing false, misleading, or nonexistent quotations or authorities." *Porfirio v. Mullin*, No. 25-CV-4055, 2026 WL 2123251, at *8 (D.D.C. July 23, 2026). Doing so may violate counsel's "duty toward [his] client to exercise professional judgment and responsibility," *id.*; the D.C. Rules of Professional

Conduct, which prohibit an attorney from "knowingly" making a "false statement of fact or law to a tribunal," *id.* (quoting D.C. R. Pro. Conduct 3.3(a)(1)); and Federal Rule of Civil Procedure 11(b)(2), which provides that when "'presenting to the court a pleading, written motion, or other paper,' an attorney 'certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law,'" *id.* (quoting Fed. R. Civ. P. 11(b)). Courts have not hesitated to sanction attorneys "who have filed pleadings . . . citing nonexistent legal authorities and quotations." *Id.* (collecting cases).

Here, Ms. Garner's opposition contains numerous errors. First, counsel quotes *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998), but for propositions that do not appear in the case, *see* ECF No. 7, at 5 (quoting *Aka* to say "intent and credibility are crucial issues" and present "jury questions"); *id.*, at 12 (quoting *Aka* to say that comparators need not be "mirror images" of each other); *id.*, at 22 (quoting *Aka* to say that discriminatory intent "often must be inferred from circumstantial evidence found in affidavits and depositions"). Second, counsel quotes *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002), for the proposition that "statements revealing discriminatory motivation are highly probative of discriminatory intent," even though the Circuit did not say that in its opinion, *see* ECF No. 7, at 2. Third, counsel quotes *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) for the proposition that "employees have been found similarly situated even when they reported to different immediate supervisors if the same decision-makers were involved in the adverse actions," but that language is not in *Brown*, *see* ECF No. 7, at 12. The court could go on, but it will instead direct Ms. Garner's counsel to show cause within fourteen days why he should not be sanctioned for his incorrect and misleading citations and explain whether he used generative artificial intelligence when writing his brief. In

his show-cause submission, counsel shall (1) include a list of all cited authorities in the opposition brief, along with an explanation whether each citation or quotation is substantiated by the underlying case; (2) a description of what caused any errors to appear in the filed brief, including whether counsel used generative artificial intelligence when drafting; and (3) a statement about what sanction, if any, would be appropriate for the court to impose.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 5, is **GRANTED** to the extent that Count III of the Complaint, ECF No. 1, at ¶¶ 85-93, is **DISMISSED** with prejudice under Rule 12(b)(6), but the motion is otherwise **DENIED**. It is further **ORDERED** that Defendant shall respond to Plaintiff's Complaint, ECF No. 1, on or before October 6, 2026. *See* Fed. R. Civ. P. 12(a)(4)(A). Finally, it is further **ORDERED** that Plaintiff's counsel shall **SHOW CAUSE** on or before October 6, 2026 why he should not be sanctioned for the incorrect and misleading citations and quotations in his opposition brief, ECF No. 7, in accordance with the court's instructions above.

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: September 22, 2026