**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | * | |
| WANDA GARNER. | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No. 1:25-cv-04024-LLA |
| | * | |
| TRANSIT EMPLOYEES FEDERAL CREDIT UNION | * | |
| Defendant. | * | |
| | * | |

*  *  *  *  *  *    *  *  *  *  *  *

**PLAINTIFF'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE**

Undersigned counsel for Plaintiff respectfully submits this response to the Court's Order to Show Cause dated September 22, 2026 (ECF No. 12). The Order directs counsel to address citation errors in Plaintiff's Response in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 7) (the "Opposition").

**INTRODUCTION**

As a threshold matter, Counsel acknowledges that artificial intelligence was used during a portion of the drafting process; however, the Opposition was originally researched, drafted, and cited by Counsel. A legal fellow holding a J.D. then cite-checked the document against the primary authorities. Only after that process was complete was the document submitted to a proprietary AI tool for the limited purpose of improving the prose and citation formatting. It was only during this final revision step that AI became involved in the drafting process.

Due to that final review step within the AI system, the Opposition contained errors that should not have reached this Court. Some quotations did not match the authorities to which they were attributed. Some propositions were overstated. In several instances, case holdings were misstated. As explained below, many of these errors were introduced during the AI-assisted revision of material that Counsel had previously researched, drafted, and cite-checked.

Candidly, counsel discloses that some of these overextensions were not attributable to AI, but resulted from Counsel's own effort to draw broader principles from the authorities and, in advocating zealously for his client, extending some of those authorities further than their holdings may have warranted.

Counsel does not minimize these errors or offer the role of AI as an excuse. It is, however, an important part of the explanation for how the errors occurred. The filing bore Counsel's signature, and the obligation under Federal Rule of Civil Procedure 11(b) to ensure that its citations, quotations, and representations of authority were accurate remained Counsel's. Counsel's failure was permitting the revised document to be filed without conducting a full, second citation re-verification after the AI-assisted revision altered material that had already been checked against the primary authorities.

Here, Counsel provides the Court with a complete and accurate account of how the errors occurred. That account shows the following:

- Every case cited in the Opposition exists (i.e. no AI "hallucinated" cases);
- The underlying research was performed by counsel using Westlaw;
- The errors were introduced at a specific and identifiable point in the Firm's process; and

- Since the December 31, 2025 filing of the Opposition, the Firm has created and implemented a formal process to close that process gap.

## I. HOW THE ERRORS OCCURRED

### *A. Research and Drafting*

The Firm's longstanding practice, which did not change during the period at issue, has two steps. First, the drafting attorney researches the governing law in Westlaw, pulls and reads the authorities, and drafts the brief on the basis of those authorities. Second, another person cite-checks the draft against the primary sources. The Opposition was prepared this way. The undersigned researched and drafted it. A legal fellow holding a J.D. then cite-checked the draft against the primary sources, before the step described below.

### *B. The Language-Revision Step*

During a period spanning late 2025 to early 2026, the Firm added one step after drafting and cite-checking were complete. Counsel submitted the finished draft, together with the authorities on which it relied, to an AI tool for a limited purpose: to improve the prose and to speed the formatting of citations.

The Firm represents plaintiffs in employment matters, most of whom have lost their jobs or are at risk of losing them; by the very nature of this practice, we are extremely conscious of the meaningful cost for employees to seek justice through the Courts. The Firm adopted this step with the intent to present its arguments as effectively as possible while controlling time allocated to non-substantive legal drafting work like citations, thereby better controlling cost of litigation for those clients. Counsel did not ask the tool to locate authority, to supplement the research, or to do anything beyond revising language counsel

had already written based on attorney-researched case authorities. No personal, confidential, or privileged information was provided to the tool.

Counsel was aware that AI tools can fabricate cases and create "hallucinated" cases. Counsel believed, incorrectly, that supplying the tool with real, attorney-reviewed case law would prevent that. Counsel did not anticipate that a revision step would do any of the following:

- Rearrange language to make an argument sound stronger than the authority cited; or
- Alter quotations drawn from the cases themselves, or add quotation marks around statements summarizing or describing holdings; or
- Attach propositions to authorities that do not support them.

Counsel believed the document being filed was a language-improved version of counsel's own research and drafting. That belief was mistaken. The result was an inaccurate filing before this Court bearing the undersigned's signature.

***C. The Point of Failure***

The failure regarding the Opposition was one of sequence. Both attorney and a legal fellow cite check was performed *before* the AI revision rather than after it. Because the draft had already been verified against the primary sources, no second cite check followed the revision. That second check would have caught every error the revision introduced, and its absence is why those errors reached the Court.

Not every error identified by the Court originated in the revision step. As set out in Part II, several reflect counsel's own drafting and judgment, and counsel identifies them as such.

## II. ACCOUNTING OF EACH CITATION

The Court requested a specific accounting of the authorities cited in the Opposition. For clarity, counsel groups them below by the nature of the error.

### *A. Authorities Correctly Cited*

The following authorities are accurately cited and support the propositions for which they were offered:

- *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The quoted language is accurate.
- *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The quoted language and citations to the holding are accurate, though the end of the case quotation on Page 38 should end with "[.]" rather than a period.
- *Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985). The quotations are accurate, though the citation to this case on Page 19 of the Opposition should have been followed by a parenthetical: (citing Rule 12(b) for the phrase "reasonable opportunity").
- *Estenos v. PAHO/WHO Federal Credit Union*, 952 A.2d 878, 885–86 (D.C. 2008), and D.C. Code §§ 2-1403.04(a), 2-1403.16(a). The summary of *Estenos* and citation to the Code sections is properly placed.
- *Convertino v. U.S. Department of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson*, 477 U.S. at 257). The citation to the case on Page 20 of the Opposition

should have been followed by the parenthetical: (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C.Cir.1995)).

- *Jones v. Lattimer*, 29 F. Supp. 3d 5, 17 (D.D.C. 2014) (citing *Convertino*, 684 F.3d at 99). The citation to the case on Page 16 of the Opposition should have been followed by the parenthetical: (*quoting* McWay v. LaHood, 269 F.R.D. 35, 39 (D.D.C.2010)).

- *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014). The citation should have pointed to the case at 1023, not 1022, where the D.C. Circuit stated: "We have been clear, however, that '[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.' *Brown* at 1022 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C.Cir.2008)). Counsel also recognizes that more directly applicable authority was available on this point.

***B. Correct Authority and Proposition; Inaccurate Quotation***

In each of the following, the authority exists and supports the proposition for which it was cited. However, language regarding these cases placed in quotation marks in the Opposition are not accurate reproductions of text from the cases. During the AI's citation review, the program took the counsel-drafted case summary and description language and added quotation marks around them.

The Opposition should have paraphrased the opinion or quoted it accurately. Counsel now understands these alterations were introduced during the revision step. The following were improperly presented in the Opposition as quotations:

- *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
- *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009).
- *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).
- *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir. 2004).
- *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276 (2009). The phrase "informal protest" should not have appeared in quotation marks.
- *Ware v. Nicklin Associates, Inc.*, 580 F. Supp. 2d 158, 163 (D.D.C. 2008).
- *Haynes v. District of Columbia Water & Sewer Authority*, 924 F.3d 519 (D.C. Cir. 2019). The case was cited as a contrasting comparison and is correctly characterized, but the quoted language is inaccurate.
- *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). The case is correctly cited, but the following sentence attributed to *Brady* is not *Brady*'s language: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." The relevant holding of *Brady* is that the district court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" 520 F.3d at 494.

### *C. Omitted Introductory Signals*

The following authorities support the propositions for which they were cited. However, they support those propositions by inference rather than directly, so each should have been introduced with a "see" signal.

- *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
- *Woodruff v. Peters*, 482 F.3d 521, 529–30 (D.C. Cir. 2007). The Opposition cited *Woodruff* for the proposition that temporal proximity is highly probative of causation, and that same-day adverse action is the closest proximity possible.

### *D. Propositions Overstated or Mischaracterized*

In each of the following, the authority is relevant to the argument, but the Opposition characterized it more broadly than, or differently from, its actual holding.

- *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002). This is the most serious error in the Opposition. Counsel researched *Waterhouse*, but the Opposition presented it as standing for the opposite of its holding. The error arose from a combination of counsel's drafting and the way the revision step restated that drafting. *Waterhouse* should not have been cited for that proposition.
- *Aka*, 156 F.3d at 1288. This error is separate from the quotation issue noted in Part II.B. *Aka* holds that on summary judgment the nonmovant's evidence is to be believed. It does not state that summary judgment should be used sparingly. That characterization reflects counsel's own synthesis of *Aka* with other authority, and is a zealous advocate's argument for the sparing use of pre-discovery summary judgment disposition that should not have been attributed to *Aka*.

- *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). The parenthetical describing *Price Waterhouse* as holding that sex stereotyping violates Title VII is accurate. The reference to motherhood, however, overstates the holding. That concept derives from *Hibbs*, discussed next, and was incorrectly carried over into the *Price Waterhouse* parenthetical in drafting.

- *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 736 (2003). *Hibbs* accurately contains the language on which counsel relied: "Historically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first, and workers second. This prevailing ideology about women's roles has in turn justified discrimination against women when they are mothers or mothers-to-be." *Hibbs*, however, arises under the Family and Medical Leave Act, and the Opposition did not make that context clear. The principle is accurately stated and pulls in reasoning from this nation's highest Court on the subject matter of the instant case (employment barriers to women, particularly mothers), but the Opposition should have identified it as coming from a different body of law. This was a drafting error by counsel.

- *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The Opposition overstated *Troupe*'s holding. Counsel intended to rely on the following statement: "All that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class, in this case the class of pregnant women." *Troupe*, 20 F.3d at 737.

- *Stewart v. National Education Ass'n*, 471 F.3d 169, 173–74 (D.C. Cir. 2006). The Opposition misstated *Stewart*, although the case supports the dismissal standard for which it was offered.

### *E. Quotations and Propositions Not Supported by the Cited Authority*

Counsel researched each of the following authorities, and each exists. However, the quotations or propositions attributed to them in the Opposition do not appear in, and are not supported by, the opinions. Counsel understands these to have been introduced during the revision step. None of these characterizations should have appeared in the Opposition.

- *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). The case reflects the general principle discussed. However, the quoted language does not appear in the opinion, and the case bears only a loose connection to the argument it was offered to support.

- *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000). The comments at issue in *Santiago-Ramos* were part of the evidence the court considered in finding sufficient evidence of pretext. However, the quoted material attributed to the case does not appear in the opinion.

- *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). *Forkkio* was researched by Counsel but was not intended to be cited for the proposition that a two-month gap is sufficient to establish temporal proximity. The case does not support that proposition, and the parenthetical attributed to it was erroneous. As with *Hamilton*, the case appeared in Counsel's working research notes and was incorporated during the AI-assisted revision process in a manner Counsel did not intend and failed to identify before filing.

- *Clark County School District v. Breeden*, 532 U.S. 268, 273–74 (2001). *Breeden* was researched by Counsel but was not intended to be cited for the proposition that "three to four months may suffice" to establish temporal proximity. To the contrary, *Breeden* states that temporal proximity, standing alone, must be "very close" and cites decisions finding three- and four-month periods insufficient. The parenthetical attributed to *Breeden* was therefore erroneous. As with *Forkkio* and *Hamilton*, the case appeared in Counsel's working research materials and was incorporated during the AI-assisted revision process in a manner Counsel did not intend and failed to identify before filing.

- *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). The Opposition cited *Hamilton* in several places. The citation to *Hamilton* for the proposition that district courts abuse their discretion by denying Rule 56(d) relief where discovery has not occurred was erroneous. *Hamilton* does not address Rule 56(d) and does not support that proposition.

Counsel had researched *Hamilton* and retained notes concerning the case at the end of the working draft for reference during drafting. Those notes were not intended to appear in the final filing. During the AI-assisted revision process, however, material derived from those notes was incorporated into the final draft and erroneously associated with the Rule 56(d) proposition. Counsel failed to identify and remove the erroneous citation before filing.

Elsewhere, the Opposition cited *Hamilton* for its discussion of pretext, including comparative qualifications, subjective explanations, and the absence of contemporaneous documentation. Those principles are supported by *Hamilton*, although the Opposition drew an aggressive analogy between the facts of *Hamilton*,

which involved comparative qualifications in a promotion decision, and the circumstances presented here.

- *Tao v. Freeh*, 27 F.4th 635, 651 (D.C. Cir. 2022). Counsel researched *Tao* because the case involved proceedings before discovery had occurred and retained notes concerning the case at the end of the working draft. *Tao* was not intended to be cited for the proposition ultimately attributed to it in the Opposition, which is not supported by the opinion. During the AI-assisted revision process, material derived from Counsel's research notes was incorporated into the final draft and associated with that proposition. Counsel did not intend that use of *Tao* and failed to identify and remove the erroneous citation before filing.

## III. REMEDIAL MEASURES

The Firm has addressed both the specific point of failure and the broader question of AI use through meaningful policy reform to both guardrail AI system usage and further ensure that citations are verified by multiple staff members after AI use on a brief.

### ***A. Revised Verification Protocol***

Effective April 9, 2026, the Firm adopted written protocols that apply to every filing:

1. Counsel drafts the filing, with all research performed in Westlaw.

2. A paralegal or associate who did not draft the document performs a comprehensive cite check, including pin cites, to confirm that every citation and quotation matches the primary source. The reviewer is also expected to identify stronger or more directly applicable authority.

3. The filing attorney personally cite-checks the entire final document against the primary sources and files it only if satisfied.

The redundancy is deliberate. No filing is treated as accurate because it began as a fully researched draft or because someone else has already reviewed it. The final verification now occurs after every change to the document, so no intervening step can alter a filing after it has been checked. This final step is consistent with the verification requirement the District of Maryland has since articulated for all attorneys practicing before it. *See* Standing Order 2026-03 (D. Md. Aug. 5, 2026).

### *B. Restrictions on AI Use*

The Firm no longer uses or permits the use AI at any stage of drafting any document filed with a court. AI is not used for statements of law, for citation work, or to revise the language of any filing. The Firm continues to use a closed AI system internally for correspondence, summarizing materials, and organizing work product. That system has no role in the preparation of court filings.

## IV. SANCTIONS

The Court has ruled on Defendants' Motion, so a corrected Opposition would serve no purpose. Part II of the instant Show Cause Response is intended to provide corrected and verified support without the inefficiency for this honorable Court of reviewing both this substantive Show Cause Response and a highly repetitive corrected Opposition. For each authority the Court identified, it states on the record what the authority actually holds and how the Opposition departed from it. Counsel has informed Plaintiff of the Court's Order and of this response. If preferred, Counsel can promptly provide a corrected/revised Opposition upon instruction from the Court.

Whether to impose sanctions rests within the Court's discretion. *See* Fed. R. Civ. P. 11(c)(1) and the Court's inherent authority. Counsel does not ask the Court to excuse the errors on the ground that some arose from a tool rather than from counsel. With no intent to sway or argue for the use of AI, Counsel would respectfully submit that AI has infiltrated every aspect of the practice of law. The opening screen of Westlaw, for example, now has an offer to run "AI Deep Research" while everyday attorneys are bombarded with advertisements, continuing education credits, and even outreach from the bar associations on the use of generative AI. It was our intention to use this in a way we believe that would help and avoid the pitfall of generative AI in legal practice that we were aware of at the time: hallucinated cases. Instead, we got a result that made the firm conclude that AI cannot be used as it was in drafting the Opposition. In response, the Firm created wholistic guardrails for AI use.

To the extent the Court considers sanctions, Rule 11 provides that any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Counsel respectfully submits that the deterrent purpose of the Rule has already been served here, and asks the Court to consider the following:

- The research was genuine. Every authority cited in the Opposition exists, and the research underlying it was performed by counsel.
- There was no intent to mislead. The errors arose from a process failure counsel did not anticipate, not from any intent to mislead the Court or opposing counsel. The facts and merits of the case stood independently of these errors, which did not advance Plaintiff's position and instead became an unnecessary distraction from the issues before the Court.

- The Issue has been identified and corrected. The Firm identified the specific gap in its process and closed it through written protocols requiring verification after every change to a filing, together with a prohibition on the use of AI at any stage in drafting court filings. Those protocols took effect before the Court issued its Order to Show Cause.

- The problem was confined to a discrete period and practice. The errors arose during a limited period in which the Firm used AI as a post-drafting revision tool after its ordinary research and cite-checking process had been completed. That practice has ended, and the Firm's current procedures eliminate the sequence that allowed these errors to reach the Court.

None of this lessens the seriousness of filing inaccurate authority with the Court, and counsel regrets it. The filings made during this brief period have been deeply embarrassing for a firm that prides itself on its quality of work. Counsel respectfully asks that the Court, in the exercise of its discretion, accept this response and discharge the Order to Show Cause without the imposition of sanctions. Should the Court request a corrected Opposition, counsel is prepared to file it promptly.

Dated: 10/1/26

Respectfully Submitted,

QUINN PATTON

/s/ Donald Quinn
Donald G. Quinn, Fed. Bar No. 1738652
Quinn Law Group
838 Ritchie Highway, Suite 4
Severna Park, Maryland 21146
(443)247-5444 / (202) 508-3644
donquinn@quinnpatton.com
*Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY certify, on this 1st day of October 2026, the foregoing was filed electronically and served by CM/ECF to all CM/ECF users

/s/ Donald Quinn

Donald G. Quinn